IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH M. CASSELS,

      Plaintiff,                        No. CIV S-10-0775 MCE DAD P

    vs.

D. LIGGETT, et al.,

      Defendants.                FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion for summary judgment brought on behalf of defendants Mathews and Liggett pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on an amended complaint against Sergeant Mathews and Correctional Officer Liggett. Therein, plaintiff alleges as follows. On December 14, 2008, defendant Liggett came to plaintiff's dorm and ordered all inmates to exit the dorm for the dayroom. Defendant Liggett passed plaintiff, and plaintiff informed him that he would need his insulin. When defendant Liggett asked plaintiff to identify himself and plaintiff said "Cassells,"

1

the defendant informed him that defendant Mathews and Correctional Officer Tai were searching his property. (Am. Compl. Attach. 1-6.)

Not long thereafter, plaintiff reminded defendant Liggett that he would need his insulin. Defendant Liggett released plaintiff from the dayroom and locked him in the shower area. Moments later, he returned with clothing for plaintiff to wear so he could go to the clinic to obtain his insulin. Plaintiff informed the defendant that he needed a different shirt. In response, defendant Liggett said "stop giving me a rash of shit" and walked away. Plaintiff responded, "hey man, don't cuss at me." At that point, defendant Liggett rushed plaintiff and hit him in his chest with part of his chest and forearm causing plaintiff to stumble and almost fall. The following day, plaintiff awoke with a painful and stiff neck and had to see his primary care physician and request a referral for a spinal epidural for pain. According to plaintiff, defendant Liggett exacerbated plaintiff's pre-existing spinal condition. (Am. Compl. Attach. at 6-11.)

Plaintiff alleges that defendant Mathews' search that day took a total of four hours. In plaintiff's view, defendant Mathews conducted the search in retaliation for plaintiff filing a grievance complaining about a September 2008 search of his property. In that grievance, plaintiff complained to prison officials that California Medical Facility allowed cadets from the police academy to search through his property and destroy it. On November 24, 2008, defendant Mathews interviewed plaintiff in his bed area regarding this grievance. At the time, she declined to search his property and bed area but, as noted above, defendant Mathews searched plaintiff's belongings twenty days later. According to plaintiff, defendant Mathews confiscated what she believed was plaintiff's excess property and placed it in the property room for about a month. In January 2009, defendant Mathews collected all of plaintiff's confiscated belongings but left them unattended to respond to an alarm. As a result, other inmates were allowed to pick over plaintiff's property. Plaintiff alleges that defendant Mathews conducted her search beyond the appeal due date and showed no concern for his loss of property, and therefore her search must

/////

have been in reprisal for plaintiff filing his grievance regarding the September 2008 search by police academy cadets. (Am. Compl. Attach. at 12-22.)

On June 17, 2010, the court screened plaintiff's amended complaint and found that it stated a cognizable Eighth Amendment excessive use of force claim against defendant Liggett as well as a cognizable First Amendment retaliation claim against defendant Mathews.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

4

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

/////

/////

II. The Eighth Amendment and Excessive Use of Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986). See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). To prevail on an Eighth Amendment claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

It is well established that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. A prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently serious constitutional deprivation. Id. at 9-10. See also Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175, 1178-79 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he the good fortune to escape without serious injury.")

/////

III. First Amendment Retaliation

Under the First Amendment, prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts. See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Prison officials may not retaliate against prisoners for doing so. See id. at 568. In this regard, the Ninth Circuit has explained:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Id. at 567-68.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by defendant Liggett, defendant Mathews, and Officer Tai. It is also supported by citations to plaintiff's amended complaint and the exhibits attached thereto. The evidence submitted to the court by the defendants establishes the following.

Plaintiff filed inmate appeal Log. No. CMF 08-3230, alleging that some of his personal belongings were damaged or stolen during a September 2008 property search. Defendant Mathews was supposed to prepare a first level response to that appeal sometime before November 24, 2008. On November 24, 2008, defendant Mathews interviewed plaintiff regarding the allegations in his grievance. After the interview, defendant Mathews obtained plaintiff's prison property records to determine if the items plaintiff claimed were missing or damaged were legally obtained and properly in his possession. After taking a considerable amount of time to review plaintiff's property records, defendant Mathews began composing a written response to plaintiff's inmate appeal. Defendant Mathews intended to search plaintiff's property the next day and complete her response to the appeal. However, on the next day, an

inmate in defendant Mathew's housing unit was the victim of a battery.  Given the threat to institutional safety and security posed by this incident, defendant Mathews was assigned to conduct a formal confidential investigation into that attack.  The investigation took approximately three weeks to complete, and defendant Mathews was unable to conduct her search of plaintiff's property during that period of time because the battery investigation was of a higher priority.  She personally spoke with plaintiff regarding his appeal response and informed him that she was working on more pressing matters.  (Defs.' SUDF 1-6, Pl.'s Am. Compl. Ex. E, Mathews Decl.)

On December 14, 2008, defendant Mathews obtained permission to halt programming in plaintiff's dorm so that she could conduct an inventory search of plaintiff's property in order to finally complete her investigation of his inmate appeal.  Upon arriving at plaintiff's dorm, she directed defendant Liggett to cease all programming and secure resident inmates in the dayroom, which defendant Liggett did.  Defendant Mathews commenced an inventory search of plaintiff's property, which was located under, around, above, and inside his bunk and locker.  Plaintiff had a large volume of personal property that caused the search to take a considerable length of time.  Under the California Code of Regulations and California Medical Facility policy, inmates are generally allowed six cubic feet of property.  Defendant Mathews estimated that plaintiff had more than twelve cubic feet of property.  Defendant Mathews identified and confiscated some items of contraband among plaintiff's property and set aside other portions of plaintiff's property as constituting excess personal property.  (Defs.' SUDF 7-10, Mathews Decl., Liggett Decl., Tai Decl., Lewis Decl. & Ex. D.)

During this search, plaintiff was secured in the dayroom.  Plaintiff approached defendant Liggett and told him that he needed to be released to receive his insulin shot at the yard clinic.  Plaintiff needed different clothing to go to the clinic, so defendant Liggett went back to plaintiff's bunk, retrieved some clothing items, and returned to give them to plaintiff.  Defendant

/////

Liggett handed the clothing to plaintiff, and plaintiff told him that he had brought the wrong clothes to him.

According to plaintiff's version of events, defendant Liggett became verbally abusive when plaintiff tried to tell the defendant that he had retrieved the wrong shirt.  After plaintiff called to defendant Liggett, plaintiff alleges that the defendant rushed toward him and bumped into plaintiff's chest with his own chest and forearm.  (Defs.' SUDF 11-14, Pl.'s Am. Compl., Liggett Decl.)  On the other hand, according to defendant Liggett's version of events, plaintiff became very angry when he handed him the clothing and complained that he needed a different shirt with his medical pass and small envelopes in the pocket.  When defendant Liggett turned away to go back to the dayroom area, plaintiff continued to make comments and speak loudly.  Defendant Liggett repeatedly told plaintiff to calm down and stop yelling.  Defendant Liggett did not bump or strike plaintiff in any way during the interaction.  While defendant Liggett may have raised his voice toward plaintiff and approached him closely while speaking, he did not make contact with plaintiff in any way that would have caused plaintiff to fall back or lose his balance.  (Defs.' SUDF 15-16, Liggett Decl.)

Ultimately, defendant Liggett returned to plaintiff's bunk to retrieve another shirt, found a shirt with small envelopes in the pocket, and gave it to plaintiff.  Plaintiff changed his clothing and left for the medical clinic.  At that time, plaintiff did not appear to be in any pain or discomfort.  After leaving the dorm, plaintiff complained to Sergeant Brida about defendant Liggett's allegd chest bump.  On that same day, prison medical staff examined plaintiff and recorded "No injury, only frustration as result."  (Defs.' SUDF 17-20, Pl.'s Am. Compl., Liggett Decl., Lewis Decl. & Ex. B.)

After getting his insulin shot, plaintiff returned to his dorm.  Defendant Mathews spoke to plaintiff about the inventory search of his property and told plaintiff that he had to reduce his property down to six cubic feet.  Plaintiff became agitated and argumentative regarding the search and threatened to file an inmate grievance over the incident.  Plaintiff did

9

not appear to be in any pain at the time, and he had no visible injuries.  Plaintiff reviewed his property and determined which items he wished to keep.  After plaintiff reduced his personal property as instructed, defendant Mathews secured the confiscated and excess items.  She later returned some items of property to plaintiff after confirming with other correctional staff that he was allowed to possess them.  After concluding her investigation regarding plaintiff's inmate appeal, defendant Mathews determined that various items plaintiff claimed were damaged or missing were either in his possession or he was not entitled to possess them.  Plaintiff's inmate appeal was partially granted and he was authorized to receive or be reimbursed for a new electric water heating coil.  (Defs.' SUDF 21-24, Pl.'s Am. Compl., Mathews Decl., Tai Decl.)

        Plaintiff alleges that he awoke with a stiff and painful neck the day after defendant Mathews conducted her inventory search.  On that same day, plaintiff had a medical appointment for his Hepatitis C condition.  Plaintiff's medical records contain no indication that he reported any alleged stiffness or pain to medical staff.  In addition, in February 2009, plaintiff underwent a medical examination at UCSF Medical Center where staff compared a current CT scan of plaintiff's back and neck regions with similar images taken in July 2008.  Staff determined that plaintiff's back and neck condition were "essentially unchanged" from the time of the prior image.  (Defs.' SUDF 25-26, Pl.'s Am. Compl., Lewis Decl. & Ex. B.)

II. <u>Defendants' Arguments</u>

        Defense counsel argues that defendants are entitled to summary judgment in their favor with respect to plaintiff's excessive use of force and retaliation claims.  First, as to plaintiff's excessive use of force claim, counsel argues that defendant Liggett's alleged chest bump (which the defendant denies) does not rise to the level of a constitutional violation because the alleged force used was de minimis and not the kind of force "repugnant to the conscience of mankind."  Moreover, according to defense counsel, plaintiff suffered minimal injuries, if any, as a result of this alleged incident.  As to plaintiff's retaliation claim, counsel argues that there is no evidence showing that defendant Mathews acted with a retaliatory intent when she searched

1  plaintiff's property. Defense counsel also contends that plaintiff's rights were not chilled and
2  that defendant Mathews had a legitimate penological reason for conducting the challenged
3  search. Finally, counsel argues that the defendants are entitled to qualified immunity with
4  respect to plaintiff's claims. (Def.'s Mem. of P. & A. at 7-17.)

5  III.  Plaintiff's Opposition

6       Plaintiff's lengthy opposition to defendants' motion for summary judgment is
7  supported by his own declaration signed under penalty of perjury. It is also supported by
8  declarations from fellow inmates, W.L. Shackleford and Nathan Turner, and responses to
9  defendants' statement of undisputed facts and declarations. In support of his excessive use of
10 force claim, plaintiff argues that he merely told defendant Liggett that he needed a specific shirt
11 that contained his insulin card in order to go to the clinic to receive his insulin shot, but that
12 defendant Liggett ignored him and began cussing at him. Only then, according to plaintiff, did
13 he call out to Liggett and ask him not to cuss at him out of mutual respect. In response, plaintiff
14 contends, defendant Liggett rushed him from about twenty yards away and bumped into him on
15 purpose with his chest and forearm. According to plaintiff, defendant Liggett knocked plaintiff
16 off balance and backwards causing plaintiff to grasp at a locker on the wall to keep from falling.
17 Plaintiff contends that he did not provoke defendant Liggett and that no force was necessary at
18 the time. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. (Doc. No. 58) at 16-18, 24-30, Pl.'s Decl.,
19 Shackleford Decl.)

20      Plaintiff contends that he woke up the next day with a stiff and painful neck. He
21 acknowledges that he went to his Hepatitis C appointment but did not discuss with staff his neck
22 or back pain. However, plaintiff contends that the Hepatitis C clinic is not the appropriate forum
23 to discuss such conditions. Rather, plaintiff contends that he discussed his pain problems with
24 his primary care doctor on December 18, 2008. Plaintiff notes that he is medically disabled and
25 has, among other things, severe spinal damage and uses a cane to ambulate. Under these
26 /////

circumstances, plaintiff maintains that defendant Liggett's use of force was not in good faith or in an effort to maintain or restore discipline. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3, 22-23.)

Turning to his retaliation claim, plaintiff contends that defendant Mathews retaliated against him for having filed his inmate appeal regarding a September 2008 search. According to plaintiff, defendant Mathews was obligated to complete her response to his appeal by November 24, 2008. However, she did not do so and as a result everything that transpired after that date "was of a personal nature because it was not based on defendant following protocol, regulations, or law." Plaintiff contends that defendant Mathews did not receive an extension of time to respond to his inmate appeal, and therefore her search of his property cannot be said to be in furtherance of a legitimate penological goal. Plaintiff also contends that defendant Mathews had been informed that plaintiff made a verbal complaint against defendant Liggett with respect to his excessive use of force, and only then did defendant Mathews say that she was going to "break him down" to six cubic feet of property. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 21, 30-34.)

Finally, plaintiff contends that defendants are not entitled to qualified immunity in this case because they should have known that they were violating his constitutional rights. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 7-8.)

IV. Defendants' Reply

In reply, defense counsel argues that plaintiff's opposition fails to demonstrate that the defendants subjected him to an excessive use of force or retaliation. Counsel reiterates that defendant Liggett's alleged chest bump to plaintiff does not rise to the level of an Eighth Amendment violation because it constituted a minimal use of force. In addition, counsel argues, the alleged chest bump resulted in de minimis injury, if any. Counsel also reiterates that plaintiff cannot present any evidence that defendant Mathews' search of his property was retaliatory. Counsel asserts that plaintiff's opposition provides nothing to demonstrate a connection between plaintiff's filing of an inmate grievance and defendant Mathews' search of plaintiff's property .

1  According to defense counsel, plaintiff opposition also fails to demonstrate that he was chilled in
2  the exercise of his rights or that defendant Mathews did not have a legitimate penological interest
3  in searching plaintiff's property.  Finally, counsel repeats the contention that defendants are
4  entitled to qualified immunity.  (Def.'s Reply at 1-10.)

**ANALYSIS**

I. <u>Plaintiff's Excessive Use of Force Claim</u>

      Defense counsel has moved for summary judgment on plaintiff's excessive use of force claim on the grounds that the evidence establishes defendant Liggett used de minimis force, if any, and caused plaintiff no discernable injury.  As to this claim, the court finds that even assuming that defendant Liggett has borne his initial responsibility of demonstrating that no reasonable juror could conclude that he used excessive force against plaintiff in violation of the Eighth Amendment, plaintiff has submitted sufficient evidence to the contrary in the form of a verified amended complaint and declarations signed under penalty of perjury creating triable material questions of fact.  Specifically, according to plaintiff, defendant Liggett rushed him from twenty yards away and bumped him with his chest and forearm.  Plaintiff has submitted evidence that as a result of this physical contact, he stumbled backwards and had to grab a locker to avoid falling.  At the time of this incident, according to plaintiff's evidence, plaintiff was using a cane to ambulate and had not provoked the defendant or posed a threat or disciplinary problem.  As a result of defendant Liggett's conduct, plaintiff's evidence indicates that he suffered a stiff and painful neck as well as an exacerbation of a pre-existing spinal condition.  (Pl.'s Am. Compl. & Pl'.s Decl.)

      To be sure, it is well established that "the Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  <u>Hudson</u>, 503 U.S. at 9.  However, this court is not persuaded by defense counsel's argument that defendant Liggett's alleged use of force was de minimis under the circumstances.

1  Whitley, 475 U.S. at 321 (factors to determine whether a use of force violates the Eighth
2  Amendment include the need for force, the relationship between the need for force and the
3  amount of force used, and the extent of the threat the officers reasonably perceived the plaintiff
4  posed). In addition, in excessive force cases, the "core judicial inquiry" is "whether force was
5  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to
6  cause harm." Hudson, 503 U.S. at 7. Here, viewing the facts in a light most favorable to
7  plaintiff as the court is required to do on defendants' motion for summary judgment, defendant
8  Liggett's alleged chest bump of plaintiff was unprovoked and not done in good faith to maintain
9  or restore discipline.

10          This court is also unpersuaded by defense counsel's argument that plaintiff's
11 absence of significant injury is fatal to his claim. Of course, a lack of significant injury is
12 relevant to an Eighth Amendment claim. Wilkins, 130 S. Ct. at 1178. For example, the extent of
13 an injury can indicate the amount of force used as well as whether the use of force could have
14 been thought necessary under the circumstances. Id. at 1177. A lack of significant injury may
15 also limit the amount of damages a plaintiff can ultimately recover. Id. at 1180. However, a
16 significant injury is not a threshold requirement for an Eighth Amendment claim. Rather, courts
17 must "decide excessive force claims based on the nature of the force rather than the extent of the
18 injury." Id. In this regard, "'the use of physical force against a prisoner may constitute cruel and
19 unusual punishment [even] when the inmate does not suffer serious injury.'" Id. at 1176. In any
20 event, viewing the facts in a light most plaintiff, plaintiff suffered a stiff and painful neck as well
21 as exacerbation of a pre-existing spinal condition as a result of defendant Liggett's alleged
22 conduct.

23          On summary judgment, the court may not weigh the parties' evidence or
24 determine the truth of the matters asserted by the parties; rather the court is required only to
25 determine whether there is a genuine issue of material fact appropriately resolved by trial. See
26 Summers v. A. Teichert & Son. Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). In this case, the

undersigned finds that there are material questions of fact in dispute surrounding defendant Liggett's alleged chest bump of plaintiff, including the amount of force defendant Liggett used, if any, the extent of plaintiff's injuries as a result of the defendant's use of force, and the circumstances under which the defendant used that force. Accordingly, defendants' motion for summary judgment on plaintiff's excessive use of force claim against defendant Liggett should be denied.[1]

II. Plaintiff's Retaliation Claim

Defense counsel has also moved for summary judgment on plaintiff's retaliation claim on the grounds that the evidence establishes that defendant Mathews possessed no retaliatory motive, plaintiff's exercise of his rights was not chilled, and defendant Mathews had a legitimate penological reason for conducting the search of plaintiff's property. As to this claim, the court finds that defendant Mathews has borne the initial responsibility of demonstrating that no reasonable juror could conclude that she retaliated against plaintiff in violation of the First Amendment. Specifically, the evidence presented by defendant Mathews establishes that plaintiff filed an inmate appeal, alleging that some of his personal belongings were damaged or stolen during a September 2008 property search. Defendant Mathews was not the subject of that inmate appeal but became involved in the appeals process because she was assigned to prepare a first level response to it sometime before November 24, 2008. Defendant Mathews interviewed plaintiff and obtained his prison property records to determine if the items he claimed were

---

[1] The Ninth Circuit has repeatedly cautioned lower courts to take care in deciding excessive force cases at the summary judgment stage. In this regard, that court has explained:

> Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on the jury's credibility determinations.

Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). See also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003).

missing or damaged were legally obtained and properly in his possession. Defendant Mathews also intended to search plaintiff's property the next day and complete her response to the appeal, but she was assigned to conduct a formal confidential investigation regarding an attack on another inmate that took priority over plaintiff's inmate appeal regarding his property. Defendant Mathews' investigation of the attack took approximately three weeks to complete. (Pl.'s Am. Compl. Ex. E & Mathews Decl.)

On December 14, 2008, defendant Mathews obtained permission to halt programming in plaintiff's dorm so that she could conduct an inventory search of his property in order to complete her first level response to his inmate appeal. Plaintiff had a large volume of personal property that caused the search to take an extraordinary length of time. Inmates are generally allowed six cubic feet of property; plaintiff had more than twelve cubic feet of property. Defendant Mathews identified and confiscated some items of contraband (including pieces of State property, unauthorized cable television splitters, pens, and a can opener) and set aside other portions of plaintiff's excess property. When defendant Mathews told plaintiff that he would be required to reduce his property to six cubic feet, plaintiff became agitated and argumentative regarding the search and threatened to file an inmate grievance over the incident. Ultimately, plaintiff reduced his property, and defendant Mathews secured the confiscated and excess items. She later returned some items to plaintiff after confirming with other correctional staff that plaintiff was allowed to possess those items. After concluding her investigation regarding plaintiff's inmate appeal, defendant Mathews determined that various items of property which plaintiff had claimed were damaged or missing, were either in fact in his possession or plaintiff was not entitled to have them in his possession under prison regulations. Plaintiff's inmate appeal was partially granted and he was authorized to receive, or be reimbursed for, a new electric water heating coil. (Mathews Decl. & Tai Decl.)

Given the evidence submitted by defendant Mathews in support of the pending motion for summary judgment, the burden shifts to plaintiff to establish the existence of a

genuine issue of material fact with respect to his retaliation claim.  Here, viewing the facts in the light most favorable to plaintiff, plaintiff has not provided the court with sufficient evidence demonstrating that defendant Mathews' alleged actions were retaliatory in nature.  See Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (court may consider as evidence in opposition to a motion for summary judgment a pro se plaintiff's contentions when they are based on personal knowledge and set forth facts that would be admissible in evidence).

        Specifically, a viable retaliation claim requires, in part, that plaintiff point to some evidence demonstrating causation.  Here, plaintiff has failed to point to any evidence suggesting that defendant Mathews' alleged actions were substantially motivated by, or because of, plaintiff's engagement in protected conduct.  Throughout his amended complaint and opposition to the pending motion for summary judgment, plaintiff insists that defendant Mathews' search of his property must have been in retaliation for his filing of an inmate appeal because her search took place after the deadline for responding to his inmate grievance had passed.  Likewise, plaintiff insists that defendant Mathews forced him to break down his property to six cubic feet only after she learned that plaintiff had spoken to Sergeant Brida about defendant Liggett's alleged excessive use of force.

        However, a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this."  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).  Here, plaintiff's contentions are supported only by sheer speculation.  Speculation is not probative evidence indicating the crucial link between plaintiff's filing of an inmate appeal and his complaining to Sergeant Brida about defendant Liggett's alleged conduct on the one hand, and defendant Mathews' alleged retaliatory search on the other hand.  Moreover, this case is distinguishable from cases in which a retaliation claim has survived summary judgment due to the timing of events combined with a defendant's statements to a

17

plaintiff which raised questions regarding the defendant's motives.  See Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009); Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).  In this case, defendant Mathews was not the subject of either plaintiff's inmate appeal or his complaint to Sergeant Brida.  Nor has plaintiff presented any evidence of defendant Mathews having a history of friction or disputes with plaintiff.  As plaintiff acknowledges, he had no contact with defendant Mathews until November 24, 2008, when she interviewed him regarding his inmate appeal, and December 14, 2008, when she conducted the search of his property.  (Pl.'s Decl. at 2.)  Finally, there is no evidence before the court that defendant Mathews gave plaintiff any indication at the time of her search that she was motivated by his filing of an inmate appeal or his complaining to Sergeant Brida about defendant Liggett.  In fact, defendant Mathews has provided undisputed evidence demonstrating that the timing of her search was based on her need to prioritize an investigation regarding battery of another inmate and that her order for plaintiff to break down his property was because his property exceeded six cubic feet.  This evidence refutes plaintiff's retaliation claim.

Accordingly, defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim against defendant Mathews should be granted.

III. Qualified Immunity[2]

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

---

[2] As discussed above, the undersigned will recommend granting defendants' motion for summary judgment on the merits of plaintiff's First Amendment retaliation claim against defendant Mathews.  Accordingly, the court will address defendants' qualified immunity argument only as it applies to plaintiff's Eighth Amendment excessive use of force claim against defendant Liggett.

the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Although the court was once required to answer these questions in order, the United States Supreme Court has clarified that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S. at 236-42.

As discussed above, viewing the evidence in a light most favorable to plaintiff as the court is required to do on defendants' motion for summary judgment, defendant Liggett's alleged chest bump of plaintiff was unprovoked and not done in good faith to maintain or restore discipline in violation of plaintiff's rights under the Eighth Amendment. Moreover, the state of the law in 2008, when the alleged constitutional violation took place, would have given defendant Liggett fair warning that engaging in the excessive use of force is unlawful. At the very least, since the Supreme Court's 1992 decision in Hudson, prison officials have had ample notice that the malicious or sadistic use of force is unlawful. Accordingly, defendants' motion for summary judgment in favor of defendant Liggett on the basis of qualified immunity should also be denied.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (Doc. No. 46) be granted in part and denied in part as follows:

1. Defendants' motion for summary judgement on plaintiff's excessive use of force claim against defendant Liggett be denied;

2. Defendants' motion for summary judgement on plaintiff's retaliation claim against defendant Mathews be granted; and

3. Defendants' motion for summary judgment based on the affirmative defense of qualified immunity be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 26, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
cass0775.57